## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

MARKO BACA, ET AL.

                                           CIVIL ACTION

VERSUS

                                           NO. 17-253-BAJ-EWD

SABINE RIVER AUTHORITY

## **NOTICE**

         Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

         In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

         ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

         Signed in Baton Rouge, Louisiana, on October 31, 2017.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

1

MARKO BACA, ET AL.

VERSUS

SABINE RIVER AUTHORITY

CIVIL ACTION

NO. 17-253-BAJ-EWD

## REPORT AND RECOMMENDATION

Before the court is a Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) (the "Motion to Dismiss")[1] filed by defendant, Sabine River Authority, State of Louisiana ("SRA-L") and a Motion to Remand[2] filed by plaintiffs, Marko Baca, Erica Jill Baca, Arlis Barrow, Donna Barrow, Lee Blackmon, Tina Marie Blackmon, Roy Blackmon, Vondal Blackmon, Ernestine Boone, Russell Brack, Donald Brack, Pamela Brack, Mastern Brack, June Brack, Mary Clark, Kevin Connally, Diana Connally, Ruby Craft, Bradley Craft, Robert Cryer, Edward Cryer, Katie Evans Daffin, Rusty Egan, Carla Egan, Bobby Egan, Francis Egan, Joel Evans, Jimmy Fleniken, Johnny Nash, Kina Hill, Rodney Jarrell, Scotty Jeane, Toni Jordan, John Kerr, Lisa Kerr, Susan Knight Matthews, Edward Knowlton, Elizabeth Knowlton, John Kramer, Robert Lewis, Morgan Lewis, Luther Logan, Jr., Katherine Maresh, Brent McBride, Betty McBride, Amber McNeil, Abie Mitcham, William Mitcham, Geraldine Mitcham, Kelly Nash, Linda Newsome, Donnie Parker, Mary Parker, Joel Pennington, Kenneth Pennington, Richard Phillips, Von Savell, Max Shaw, Donice Shaw, Jeffrey Simmons, Jr., Jeffrey Simmons, Mary Simmons, Marvin Smith, Glenna Smith, John Smith, Melvin Smith, Silvia Smith, Emery Soileau, Jean Soileau, Wade Stanley, Charles Tilley, Geraldine Tilley, Kenneth Vincent, Gregg Walker, Mark Williams, Lonnie Young, and Yvonne Young (collectively, "Plaintiffs").  Plaintiffs have filed an Opposition to the Motion

---

[1] R. Doc. 5.

[2] R. Doc. 8.

to Dismiss,[3] and SRA-L has filed an Opposition to the Motion to Remand.[4]  Both parties have filed Replies in support of their respective motions.[5]  For the reasons set forth herein, the undersigned recommends[6] that the Motion to Remand[7] be GRANTED and that the Motion to Dismiss[8] be DENIED AS MOOT.

## I.    Background

On March 9, 2017, Plaintiffs filed a Petition for Compensation for Taking of Property (the "Petition") in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.[9]  Per the Petition, Plaintiffs allege they are owners of property located in Vernon and Beauregard Parishes, Louisiana and that at all relevant times, defendant, SRA-L "maintained and operated the Toledo Bend Dam, built in 1969 and located on the Sabine River in Sabine Parish, Louisiana."[10]  Plaintiffs allege that the erection of the Toledo Bend Dam "caused significant changes to the Sabine River, downstream from the dam, which changes to the river increased the risk of flooding to the property near the river" and that "changes to the Sabine River resulting from the erection of the dam caused catastrophic flash flooding in the watershed below Toledo Bend Dam on March 10, 2016."[11]  Plaintiffs assert that their properties were "devastatingly flooded"

---

[3] R. Doc. 19.

[4] R. Doc. 23.

[5] R. Docs. 20 (SRA-L's Reply in Support of Motion to Dismiss); 26 (Plaintiffs' Reply in Support of Motion to Remand).

[6] On May 24, 2017, the Motion to Remand was referred to the undersigned.  The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." *Davidson v. Georgia-Pacific, LLC,* 819 F.3d 758, 765 (5th Cir. 2016).  On September 19, 2017, the Motion to Dismiss was referred to the undersigned.  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned submits this recommendation regarding the Motion to Dismiss.

[7] R. Doc. 8.

[8] R. Doc. 5.

[9] R. Doc. 1-4.

[10] R. Doc. 1-4, ¶¶ 5 & 7.

[11] R. Doc. 1-4, ¶¶ 9-10.

and that SRA-L's actions "in modifying the watershed so as to cause flooding constitute 'a taking'" of Plaintiffs' properties.[12]  Plaintiffs assert a cause of action under the Louisiana Constitution, Article I, Section 4 "for the condemnation/taking of their property" by SRA-L and contend that under the Louisiana Constitution and La. R.S. § 13:5111, they are "entitled to just compensation to the full extent of their losses resulting from Defendant's partial taking of their properties."[13]

On April 24, 2017, SRA-L removed this action to this court, asserting federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 16 U.S.C. § 825p.[14]  In its Notice of Removal, SRA-L explains that it is a "joint licensee of the federally-licensed 'Toledo Bend Project' ('Project')" and that "[o]n October 14, 1963, a 50-year license…for the construction, operation and maintenance of the Project…was jointly issued to SRA-L and SRA-T [SRA-Texas] by the Federal Power Commission, the predecessor agency to the Federal Energy Regulatory Commission ('FERC')."[15]  SRA-L contends that the Toledo Bend Project is "required to operate only based upon, and in accordance with, a license that is issued, regulated, and enforced by FERC"[16] and that during the original 1963 license period, as well as during re-issuance procedures in 2011, FERC considered and rejected several requests to modify Toledo Bend Project operations to incorporate flood control measures.[17]  SRA-L contends that under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005), Plaintiffs' Petition

---

[12] R. Doc. 1-4, ¶¶ 11-12.

[13] R. Doc. 1-4.

[14] R. Doc. 1, ¶ 5.

[15] R. Doc. 1, p. 5.

[16] R. Doc. 1, p. 5.

[17] R. Doc. 1, p. 9.  ("The original license contained no flood control provisions.  While that license was still in force, FERC considered several requests to modify the Project's operations to incorporate flood control measures and, after conducting an analysis of historical floods, FERC denied the request, further noting that the Dam had not had 'any significant effect' on flooding.  FERC studied the same issue in the court of the joint licensees' application for a new license in 2011, and the current license also contains no flood control measures.").

necessarily raises a disputed and substantial federal issue sufficient to confer federal question subject matter jurisdiction "because…the license issued and regulated by FERC under the FPA controls every aspect of the Project's operation"[18] and because under *Simmons v. Sabine River Authority*, 732 F.3d 469, 476 (5th Cir. 2013), "'FERC 'set[s] the appropriate duty of care for dam operators.'"[19]

On May 24, 2017, Plaintiffs filed the Motion to Remand.[20]  On May 18, 2017, SRA-L filed the Motion to Dismiss.[21]  For purposes of both motions, Plaintiffs assert that "this court should assume that at all times the SRA-L was acting within the parameters of the FERC permit, that FERC had the ability and authority to impose those parameters, and that this court has no authority to modify the permit."[22]  Plaintiffs further explain that they "are not asking the SRA to change its operations in any respect (a court is not the forum for doing so).  They are simply asking that they be compensated under the taking clause of the Louisiana Constitution in the same way that the landowners whose land was expropriated to build the dam and reservoir were compensated."[23]

---

[18] R. Doc. 1, p. 10.

[19] R. Doc. 1, p. 16 (quoting *Simmons*, 732 F.3d at 476).

[20] R. Doc. 8.

[21] R. Doc. 5.  In opposition to the Motion to Dismiss and in support of their Motion to Remand, Plaintiffs contend that this court lacks subject matter jurisdiction. *See*, R. Doc. 19, p. 8 ("The grounds asserted in the 12(b) motion here are precisely the same as those asserted in the removal and were extensively briefed in plaintiffs' motion to remand, which is incorporated here by reference.  For the same reasons stated in the motion to remand, the 12(b) motion should be dismissed and this case should be remanded to the 19th Judicial District Court.").  Plaintiffs' Opposition to the Motion to Dismiss and Memorandum in Support of the Motion to Remand are substantially the same.  A federal court must first determine its subject matter jurisdiction before considering a motion to dismiss. *See*, *Riley v. F.A. Richard & Assoc., Inc.*, 46 Fed. Appx. 732, 2002 WL 1973771, at * 2 (5th Cir. 2002) ("When faced with a motion to remand, a federal court must first determine whether it may properly exercise removal jurisdiction before ruling on a motion to dismiss the plaintiff's complaint.").

[22] R. Doc. 8-1, p. 6; R. Doc. 19, pp. 7-8.

[23] R. Doc. 8-1, p. 7; R. Doc. 19, p. 8.

## II. Law and Analysis

### a. Defendant Has Not Established Federal Jurisdiction Pursuant to 28 U.S.C. § 1331

"A case aris[es] under federal law for § 1331 purposes if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 678 (2006) (internal quotations omitted). *See also*, *Grable*, 545 U.S. at 312 (explaining that federal question jurisdiction "is invoked by and large by plaintiffs pleading a cause of action created by federal law" but "[t]here is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal interests.").

Absent a federal statutory cause of action, the Supreme Court has recognized the difficulty in determining when state law claims are so intertwined with issues of federal law that they "aris[e] under" federal law for purposes of 28 U.S.C. § 1331. *See*, *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (some internal quotations omitted). In order to fit into this "special and small category" of cases in which plaintiffs have not pled a federal cause of action but the claims nevertheless arise under federal law for purposes of 28 U.S.C. § 1331, *Empire Healthchoice*, 547 U.S. at 699, the Supreme Court has framed the inquiry as "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. *See also*, *Franchise Tax Board of State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1 (1983) ("original jurisdiction is unavailable unless it appears that some substantial, disputed question of

federal law is a necessary element of one of the well-pleaded state claims….”); *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (“federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.”); *Singh v. Duane Morris, LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (same). Here, SRA-L does not argue that federal law creates Plaintiffs’ cause of action. Instead, SRA-L asserts that “plaintiff’s right to relief necessarily depends on resolution of a substantial question of federal law.”[24] Specifically, SRA-L argues that a determination of the cause of Plaintiffs’ damages (*i.e.*, whether the alleged flooding was caused by the Project or by some other cause unrelated to the Project) “necessarily implicates” FERC’s past determinations that the Project does not contribute to downstream flooding.[25] SRA-L further argues that “[t]he existence of a federal question in state law damage claims was recognized in *Simmons v. Sabine River Authority*, 732 F.3d 469 (5th Cir. 2013),”[26] and that “Simmons compels the denial of Plaintiffs’ motion to remand and subsequent finding of preemption, as presented in SRA-L’s pending motion to dismiss….”[27]

Under Louisiana law, in order to determine whether a claimant is entitled to compensation for a taking, “the court must (1) determine if a right with respect to a thing or an object has been affected; (2) if it determined that property is involved, decide whether the property has been taken or damaged in a constitutional sense; and (3) determine whether the taking or damaging is for public purpose under Article I, § 4.” *Constance v. State Through Dept. of Transp. and Development*, 626 So.2d 1151, 1157 (La. 1993). “In determining whether a party is entitled to

---

[24] R. Doc. 1, p. 4.

[25] R. Dox. 23, p. 12.

[26] R. Doc. 23, p. 13.

[27] R. Doc. 23, p. 15.

damages for inverse condemnation…the Plaintiff must show that the conduct by the public body caused the damages." *Yates v. Elmer*, 06-CA-267, 06-CA-74, C/W 06-CA-75, 948 So. 2d 1092, 1097 (La. App. 5 Cir. Nov. 28, 2006). "In the absence of causation, there can be no liability under any theory of law." *Id.*

SRA-L argues that because causation is a required element of Plaintiffs' takings claim, Plaintiffs' claim raises a substantial question of federal law concerning the scope of FERC's authority and the propriety of its licensing decisions.[28] SRA-L contends that "Plaintiffs' causation theory (construction of the dam changes watershed and causes flooding) necessarily implicates FERC's orders that hold just the opposite."[29] SRA-L further contends that "[i]n order to satisfy their causation element, Plaintiffs must disprove FERC's conclusions, which underlie its licensing orders, that the Toledo Bend Project does not contribute to downstream flooding…."[30] SRA-L argues Plaintiffs' claims will necessarily require this court "to review and assess FERC's operational requirements for this Project and to evaluate FERC's orders holding that the Project does not significantly affect flooding downstream of the Toledo Bend Dam."[31]

SRA-L is correct that Plaintiffs will have to show that the Project caused their damages in order to recover compensation for the alleged taking. SRA-L is likewise correct that, to the extent

---

[28] R. Doc. 23, p. 11.

[29] R. Doc. 23, p. 12. *See also*, R. Doc. 23, p. 10 ("The causation element of Plaintiffs' claim…requires [the court] to re-examine FERC's prior findings and determinations, and the duties and liabilities created by the FPA as set forth in the joint licensing orders issued by FERC….").

[30] R. Doc. 23, p. 15. SRA-L further contends that Plaintiffs "must also establish that their claim is not time-barred by the appeal procedures set forth in the FPA." R. Doc. 23, p. 15. As discussed herein, such defenses are not sufficient to support federal jurisdiction.

[31] R. Doc. 23, p. 3. *See also*, R. Doc. 23, p. 4 ("Any assessment of damages of SRA-L for a 'takings' based on a failure to prevent flooding, when the FERC-approved operational guidelines and orders determined that such flooding is not caused by the Project, would constitute a material and fundamental change to all aspects of operating this FERC-licensed project. Such changes are within FERC's exclusive control and therefore present a federal question."); pp. 6-7 (asserting that flood control measures were considered during the term of the original license and during the license renewal process and that FERC determined flood control measures were unnecessary).

FERC previously determined that the Project did not require flood control measures or that the Project actually ameliorated flooding concerns, such determinations by FERC will likely be raised in conjunction with the determination of causation. However, such considerations are not "substantial" issues of federal law in the sense required under *Grable*. "The Supreme Court has limited the scope of federal question jurisdiction of the type discussed in *Grable* to only a 'slim category' of cases." *Louisiana v. Pfizer, Inc.*, Civil Action No. 13-727, 2014 WL 3541057, at * 5 (M.D. La. July 17, 2014). In *Grable*, plaintiff asserted that the sale of its property to satisfy a federal tax deficiency was invalid because the IRS had improperly sent the seizure notice. *Grable*, 545 U.S. at 311. Defendant removed the suit to federal court, arguing that plaintiff's quiet title claim depended on the interpretation of a federal statutory notice provision. The Supreme Court found that federal question subject matter jurisdiction existed over plaintiff's suit, explaining that "[w]hether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." *Id*. at 315.

In contrast to *Grable*, the Supreme Court found federal question jurisdiction lacking in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006). There, the health insurance carrier for federal employees sued to recover benefits it had paid to a former enrollee based on the enrollee's recovery of damages for his injuries in a state court suit. Although the insurer's claim arose under state contract law, the insurer asserted that federal question jurisdiction existed because the Federal Employees Health Benefits Act ("FEHBA") vested federal district courts with original jurisdiction to hear suits challenging the denial of benefits such that the FEHBA was a necessary element of the insurer's claim. The Supreme Court disagreed, and distinguished *Grable* primarily on two grounds. First, the Court explained that the suit in *Grable*

centered on action by a federal agency (the IRS) and whether that action was compatible with a federal statute. *Id*. at 700.[32] In contrast, the dispute in *Empire* centered on action by non-government persons and entities. *Id*. Second, *Grable* "presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax cases." *Id*. In contrast, the reimbursement claim in *Empire* was "fact-bound and situation-specific." *Id*. at 701. Accordingly, the Court found that the state court was competent to apply federal law to the extent necessary to resolve the amount of the insurer's state law reimbursement claim. *Id*.

The Fifth Circuit has likewise held that where the action involves a highly fact bound and situation specific inquiry, federal jurisdiction is lacking. *See*, *Singh v. Duane Morris LLP*, 538 F.3d 334, 339 (5th Cir. 2008) (finding state law malpractice claim, which required plaintiff to prove that he could have established secondary meaning in his prior federal trademark suit based on evidence his attorney failed to introduce, did not involve an important issue of federal law under *Grable* because "the federal issue is predominately one of fact."). *See also*, *Pfizer*, 2014 WL 3541057, at * 9 (finding no actually disputed and substantial issue of federal law existed because "unlike the 'nearly pure question of law' presented in *Grable*, where the federal issue was dispositive of the case and would be controlling in numerous other cases, this action involves a highly 'fact bound and situation-specific' inquiry regarding the defendants' allegedly fraudulent conduct."); *Biloxi Freezing & Processing, Inc. v. Mississippi Power Company*, 16-cv-301, 2016 WL 6808158, at * 8 (S.D. Miss. Nov. 17, 2016) ("the *Grable* holding is limited to situations that present a 'pure issue of law.' By contrast, where the federal issue is 'fact-bound' and 'situation

---

[32] The undersigned notes that FERC is not a party to these proceedings and federal jurisdiction cannot be sustained on that basis. *See*, 28 U.S.C. § 1442(a)(1); *Fuller v. D.L. Peterson Trust Co.*, Civil Action No. 17-0408, 2017 WL 4324832, at * 2 (W.D. La. June 6, 2017) (noting that 28 U.S.C. § 1442(a)(1) "confers an independent jurisdictional foundation for cases involving federal officers or agencies, even where a district court otherwise would not enjoy jurisdiction.").

specific,' it does not give rise to federal question jurisdiction. The defendants' arguments as to what issues create federal question jurisdiction, such as whether revoking the defendants' authority and licenses undermines FERC orders or constitutes a taking…and whether the defendants' conduct conformed with FERC regulations…are all inherently 'fact-bound' and 'situation-specific' analyses that do not fit within the rubric of *Grable*.") (internal citations omitted).

Here, while the *cause* of the flooding will necessarily be a disputed issue in the context of Plaintiffs' state law takings claim, that issue is inherently fact bound and situation specific such that it cannot support federal jurisdiction pursuant to *Grable*. SRA-L itself contends that "although the Toledo Bend Project is not a flood control facility, in keeping with FERC's prior studies, it attenuated the peak flows and protected downstream areas from the more severe and widespread damage that would have undoubtedly occurred in its absence" such that other potential causes of the flooding must be considered.[33] While Plaintiffs assert that the Project itself caused changes downstream of the Dam which ultimately led to the flooding of their properties, SRA-L's position is that the Project did not do so, actually ameliorated any flooding concerns, and that something else was at work in causing the damage for which Plaintiffs now seek compensation.[34] Accordingly, while the cause of the flooding is disputed by the parties, and is of course

---

[33] R. Doc. 23, p. 9. *See also¸* R. Doc. 23, p. 10 (arguing that flooding from two tributaries for which SRA-L "can in no way be responsible, could have caused the flooding complained of by Plaintiffs.").

[34] The undersigned notes that in support of its Motion to Dismiss, SRA-L attaches a FERC Order and Final Environmental Impact Statement which considered downstream flood levels, historical flooding data, and specific locational concerns and uses regarding the Project. R. Docs. 5-2 & 5-3. *See also*, R. Doc. 23, p. 6 ("FERC initiated a formal proceeding that involved SRA-T, SRA-L, FERC staff, local entities, Project engineers, adjacent landowners and other interested parties. After several years of issue identification, collaboration, and investigation, and after holding numerous public and agency meetings and reviewing studies by the U.S. Corps of Engineers, historical flood data, and past operating procedures during storm events," FERC ultimately declined to incorporate flood control measures.). *See also*, R. Doc. 23, p. 7 ("FERC engaged in a public process of assessing environmental issues, reviewing environmental and operations studies (to include an operations model and downstream hydraulic model of the Sabine River), consulting with numerous federal and Texas and Louisiana State resource agencies, and obtaining participation from the public."). Both the documents attached to SRA-L's Motion to Dismiss and SRA-L's briefing indicate that whether flood control measures were necessary and the ultimate cause of Plaintiffs' damages are fact intensive inquiries inextricably tied to the particular location of the Project.

"substantial" in the sense that the issue is important to the parties and for purposes of this particular suit, the cause of the flooding is not a "context-free inquiry into the meaning of federal law" required for an issue to be considered "substantial" in the sense required by *Grable*. *See*, *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007) (finding that plaintiffs' state law tort claims arising out of an aviation accident did not support federal jurisdiction under *Grable* because the suit did not revolve around resolution of "any *particular* disputed issue of federal law" and instead "everything will depend on a fact-bound question such as whether the pilots should have executed a missed approach or, having elected to land, exercised adequate diligence in activating the thrust reversers" and "[l]ocation-specific considerations" such that the court was faced with "a fact-specific application of rules that come from both federal and state law rather than a context-fee inquiry into the meaning of a federal law."). *See also*, *Grable*, 545 U.S. at 313 ("As early as 1912, this Court has confined federal-question jurisdiction over state-law claims to those that really and substantially involve[e] a dispute or controversy respecting the validity, construction, or effect of [federal] law."); *Gunn v. Minton*, 568 U.S. 251, 260 (2013) ("it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s] a disputed federal issue….The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole.").

Moreover, to the extent that SRA-L contends that FERC's prior determinations are sufficient to confer federal jurisdiction because Plaintiffs are, in effect, making a collateral attack on FERC's prior determinations and licensing decisions via this lawsuit, "[i]t is well-settled within this Circuit that when a plaintiff fails to affirmatively allege a federal claim, 'anticipated or potential defenses, *including defenses based on federal preemption*, do not provide a basis for federal question jurisdiction.'" *Bernstein v. Atlantic Richfield Co.*, Civil Action No. 15-630, 2015

12

WL 3454740, at * 2 (E.D. La. May 29, 2015) (quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008) (citing *PCI Transp., Inc. v. Fort Worth & Western R. Co.*, 418 F.3d 535, 543 (5th Cir. 2005) (emphasis added); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption.")). *See also*, *Spear Marketing, Inc. v. BancorpSouth Bank*, 844 F.3d 464, 467 n. 3 (5th Cir. 2016) ("Whereas complete preemption establishes federal subject matter jurisdiction over a state law claim, ordinary preemption (variably called 'defensive preemption') is an affirmative defense that a defendant can invoke 'to defeat a plaintiff's state-law claim on the merits by asserting the supremacy of federal law.'") (internal citation omitted); *Soley v. First Nat. Bank of Commerce*, 923 F.2d 406, 408-09 (5th Cir. 1991) (relying on distinction between complete preemption and preemption defense and holding that the defense does not confer removal jurisdiction). "The presence of conflict-preemption does not establish federal question jurisdiction. Rather than transmogrifying a state cause of action into a federal one—as occurs with complete preemption—conflict preemption serves as a defense to a state action." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999). As this court recently explained, "if a claim is subject to conflict preemption, the issue remains a state issue, and the apparent issue of conflict preemption may preclude the validity of the law but must be enforced within the jurisdiction of the state courts." *Leet v. Hospital Service District No. 1 of East Baton Rouge Parish*, Civil Action No. 15-811, 2017 WL 3782780, at * 5 (M.D. La. Aug. 31, 2017).

In *Cooper v. International Paper Co.*, CA 12-583, 912 F.Supp.2d 1307, 1310 (S.D. Al. Dec. 14, 2012), city residents sought damages allegedly sustained as a result of defendant's operation of a paper plant "from which tons of hazardous substances, pollutants, contaminants,

and other toxic and harmful materials" had been released. Defendant removed the state court suit to federal court pursuant to *Grable* and 28 U.S.C. § 1331 arguing that plaintiffs' allegations that defendant violated both federal and state statutes and regulations to support their state law tort claims necessarily raised a substantial issue of federal law. Defendant further asserted that federal subject matter jurisdiction existed because it "may raise its compliance with federal regulations as a defense to the plaintiffs'' state-law claims." *Id*. at 1313. The court found federal question subject matter jurisdiction lacking under either argument. With respect to the alleged violations of federal statutes and regulations, the court explained that "plaintiffs have not raised an issue concerning the construction or interpretation of any of those laws" and defendant "has not shown that a state court will be called upon to do more than apply a settled federal framework to the facts of this case." *Id*. at 1313 & 1317. In so finding, the court noted that "'something more' [than] the mere application of federal law" is necessary to support federal question jurisdiction under the *Grable* formulation, "[i]nstead, it is a requirement that the state-law claims 'turn on' the resolution of a disputed area of federal law." *Id*. at 1314 (citing *Cantwell v. Deutsche Bank Sec., Inc.*, No. Civ. A. 305CV1378–D, 2005 WL 2296049, at *2 (N.D. Tex. Sept. 21, 2005) ("A federal question is sufficiently substantial to support federal jurisdiction if 'the vindication of a right under state law necessarily turn[s] on some construction of federal law.' ") (quoting *Franchise Tax Bd.*, 463 U.S. at 9)).[35]

---

[35] As one Louisiana district court explained, state law claims raising violations of federal law generally do not confer federal question jurisdiction. *Broussard v. LCS Correction Services, Inc.*, Civil Action No. 6:10-155, 2010 WL 2710642, at * 4 (W.D. La. July 6, 2010). As the court explained:

> In the Fifth Circuit, courts have, for example, held that an alleged violation of the federal HIPAA statute does not confer federal-question jurisdiction; that legal malpractice allegedly committed while representing a client in a federal trademark lawsuit and raising issues of federal intellectual property law does not confer federal-question jurisdiction; that there was no federal-question jurisdiction in a case alleging that the defendant's facility violated federal environmental regulations as well as state and local regulations that there was no federal question jurisdiction in a suit where the plaintiffs' state law claims required the resolution of issues under the Emergency Medical Treatment and Active Labor Act ("EMTALA") and federal Medicare laws, and that there was no federal-question

With respect to compliance with federal regulations, defendant argued that it complied with federal regulations by, "*inter alia*, obtaining permits from federal and state regulators expressly authorizing the very conduct that Plaintiffs now challenge under state law" and that "[i]n essence, Plaintiffs seek to use a state court lawsuit to undermine Congress's intricate [regulatory] frameworks, [and, thus, one] critical federal issue presented here [is] the scope and effect of federal environmental laws" *Cooper* at 1318. The court rejected defendant's argument that plaintiffs' claims presented a substantial federal issue "because those claims challenge the adequacy of and/or attempt 'to undermine [federal regulatory] frameworks.'" *Id.* (citing, *Gilbert v. Synagro Central, LLC*, No. 1:08–CV–1460, 2008 WL 4542248, at * 3 (M.D. Pa. Oct. 9, 2008) (remanding case where defendants claimed that the complaint "'directly challenge[d] the adequacy of EPA regulations' and thereby 'necessarily require[d] th[e] court to resolve a substantive [sic] federal issue,'" and explaining that "[a] potential federal defense is not a necessary element of a common-law tort claim."); *Wyatt v. Sussex Surry, LLC*, Civil Action No. 3:06CV835, 482 F.Supp.2d 740, 745 (E.D. Va. April 3, 2007) ("Defendants argue that removal jurisdiction exists because any resolution of Plaintiffs' claims would necessarily implicate the question of whether Synagro was in compliance with 40 C.F.R. Part 503, which regulates the use and disposal of sewage sludge, and further that Plaintiffs' claims threaten to 'upend federally prescribed practices.' However, Synagro's alleged compliance with state or federal regulations constitutes an affirmative defense,

---

jurisdiction when a suit raised an issue under the federal Telecommunications Act of 1996. In fact, it has been noted that "[c]ourts have uniformly held that a reference to federal environmental statutes, including RCRA, in plaintiffs' negligence claims is insufficient to confer federal question jurisdiction." It has likewise been held that allegations of OSHA and EPA violations do not automatically confer federal question jurisdiction when the action was not brought to enforce those regulations, there was no special need for federal expertise or uniformity in adjudicating the action, and finding federal-court jurisdiction would undermine the division of labor between state and federal courts. *Id.* (internal citations omitted).

not a part of the plaintiffs' complaint.")). Here, SRA-L has not established that this suit fits into the "special and small category" of cases in which plaintiffs have not pled a federal cause of action but the claims nevertheless arise under federal law for purposes of 28 U.S.C. § 1331, *Empire Healthchoice*, 547 U.S. at 699. Specifically, although SRA-L is correct that Plaintiffs will have to show that the Project caused the alleged damage to their properties, the question of causation is not the type of substantial issue of federal law contemplated by *Grable*. Further, while SRA-L contends that Plaintiffs' suit is an attack on its FERC-issued license and FERC's operational control, such arguments are more properly characterized as defenses to Plaintiffs' claims, which as set forth above, cannot form the basis of federal subject matter jurisdiction.

### b. *Simmons* Does Not Support the Exercise of Federal Jurisdiction

As noted above, SRA-L argues that "[t]he existence of a federal question in state law damage claims was recognized in *Simmons v. Sabine River Authority*, 732 F.3d 469 (5th Cir. 2013),"[36] and that "Simmons compels the denial of Plaintiffs' motion to remand and subsequent finding of preemption, as presented in SRA-L's pending motion to dismiss...."[37] In *Simmons*, plaintiffs alleged their properties were flooded and eroded following the opening of the Toledo Bend Dam floodgates by various defendants, including SRA-L.[38] Plaintiffs filed suit in state court

---

[36] R. Doc. 23, p. 13.

[37] R. Doc. 23, p. 15. The focus of the briefing for both parties is the substantive question of whether the claims asserted are preempted under *Simmons*. However, this court cannot reach that issue *unless* federal subject matter jurisdiction exists. As explained herein, in *Simmons*, the court had federal subject matter jurisdiction, and therefore the only substantive analysis set forth therein was whether the claims there were preempted.

[38] The Fifth Circuit explained that "[t]wo state agencies jointly regulate the Sabine River's waterways: the Sabine River Authority of Louisiana and the Sabine River Authority of Texas." 732 F.3d at 471. "Upon application by the Authorities, the Federal Power Commission granted a fifty-year license (the 'License'), commencing October 1, 1963, to the Authorities for the 'construction, operation and maintenance' of Project Number 2305 (the 'Project'). The Project included the construction of a dam (the 'Toledo Bend Dam' or the 'Dam'), a large reservoir, a spillway, and a hydroelectric plant. The Dam spans the Texas/Louisiana state line and is located in the southern part of the reservoir." *Id.* at 471-472. The Fifth Circuit further explained that:

> Between 2000 and 2003, pursuant to Article 43 of the License, FERC considered several requests to modify the Project's operations. FERC conducted an analysis of historical floods and found that the Dam had not had "any significant effect"

alleging negligence, nuisance, trespass, unconstitutional taking, damage of property without just compensation, and due process violations under the Louisiana and United States Constitutions. *Id*. Defendants removed the suit under 28 U.S.C. §1331 and 16 U.S.C. §825p. Plaintiffs subsequently filed a motion to remand, arguing that the petition did not present a federal question, and defendants filed a motion to dismiss, arguing that plaintiffs' claims were preempted. Following its analysis of federal preemption and dismissal of plaintiffs' claims, the *Simmons* court stated that "[b]ecause we have concluded that the district court properly granted Defendants' motion to dismiss, we need not consider whether the district court abused its discretion in denying Plaintiffs' motion to remand." *Id*. at 478.

The undersigned disagrees with SRA-L's assertion that "[t]he existence of a federal question in state law damage claims was recognized in *Simmons*…."[39] Rather, the district court did not provide any basis for denying the motion to remand,[40] and the Fifth Circuit did not provide any analysis of federal question subject matter jurisdiction. Significantly, and unlike Plaintiffs' Petition here, the plaintiffs in *Simmons* alleged a claim under the United States Constitution. "Whether a case is removable upon the basis of federal question jurisdiction is to be determined by the allegations of the plaintiff's 'well-pleaded complaint' as of the time of removal." *Pidgeon v. East Baton Rouge Sheriff's Office*, Civil Action No. 17-342, 2017 WL 3996436, at * 2 (M.D.

---

on flooding. FERC ultimately denied most of the requests, including a request to raise the Project's minimum reservoir elevation, and issued a report explaining its reasoning. In declining to order changes to project operations during floods, FERC observed that the Project "cannot provide any significant flood control benefits." *Id*. at 472.

[39] R. Doc. 23, p. 13.

[40] A federal court must first determine its subject matter jurisdiction before considering a motion to dismiss. *See*, *Riley v. F.A. Richard & Assoc., Inc.*, 46 Fed. Appx. 732, 2002 WL 1973771, at * 2 (5th Cir. 2002) ("When faced with a motion to remand, a federal court must first determine whether it may properly exercise removal jurisdiction before ruling on a motion to dismiss the plaintiff's complaint."). Because the district court granted the motion to dismiss based on preemption, it also implicitly denied the motion to remand.

La. Aug. 21, 2017) (citing *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001)).

*See also*, *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 326 (5th Cir. 1998)

("When an action is brought to federal court through the § 1441 mechanism, 'for both removal and

original jurisdiction, the federal question must be presented by plaintiff's complaint as it stands at

the time the petition for removal is filed and the case seeks entry into the federal system.'").[41]

Accordingly, it was unnecessary for the court in *Simmons* to consider whether plaintiffs' claims

necessarily raised a substantial and disputed issue of federal law sufficient to support subject

matter jurisdiction pursuant to *Grable* because federal question jurisdiction appeared on the face

of plaintiffs' well-pleaded complaint at the time of removal. Unlike the plaintiffs in *Simmons*,

Plaintiffs here have not alleged a federal claim.

### c. 16 U.S.C. § 825p Does Not Establish Jurisdiction In This Case

16 U.S.C. § 825p of the Federal Power Act provides that: "[t]he District Courts of the

United States…shall have exclusive jurisdiction of violations of this chapter or the rules,

regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce

any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation,

or order thereunder." *See also*, *Simmons*, 732 F.3d at 472 (stating that § 825p "provides federal

---

[41] Although the *Simmons* plaintiffs subsequently moved to amend their petition to delete references to the United States Constitution, 732 F.3d at 477, "[i]t is well settled that 'a plaintiff's voluntary amendment to a petition after removal to eliminate the federal claim upon which removal was based does not defeat federal jurisdiction.'" *Lyon v. Kroger Co.*, Civil No. 16-489, 2016 WL 6211736, at * 1 (E.D. Tex. Sept. 20, 2016) (citing *Henry v. Independent Am. Sav. Ass'n*, 857 F. 2d 995, 998 (5th Cir. 1988)). *See also*, *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995) (noting the "general rule that removal jurisdiction should be determined on the basis of the state court complaint at the time of removal, and that a plaintiff cannot defeat removal by amending it."); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir. 1985) ("the majority view is that a plaintiff's voluntary amendment to a complaint after removal to eliminate the federal claim upon which removal was based will not defeat federal jurisdiction."); *Lone Star OB/GYN Assoc. v. Aetna Health, Inc.*, 579 F.3d 525, 528 (5th Cir. 2009) ("Once the case is removed, a plaintiff's voluntary amendment to a complaint will not necessarily defeat federal jurisdiction; it is within the district court's discretion whether to remand the action to state court.").

courts with jurisdiction over duties and liabilities created by the Federal Power Act….").  In its Notice of Removal, SRA-L asserts that § 825p confers federal jurisdiction over this matter.[42]

In *Pressl v. Appalachian Power Company*, 842 F.3d 299 (4th Cir. 2016), the Fourth Circuit considered whether § 825p provided a basis for federal jurisdiction.  There, landowners brought a declaratory judgment action seeking a declaration of rights to build a dock on property subject to a flowage easement.  The property subject to the easement was within the project boundary for a hydroelectric project operated by defendant pursuant to a FERC license.  In finding that § 825p did not confer jurisdiction, the court noted that the Supreme Court "rejected the argument that the 'brought to enforce' language provides broad jurisdiction over complaints that simply mention a duty established by federal law.  Rather, claims are 'brought to enforce' such a duty only if their 'very success depends on giving effect to a federal requirement.'"  *Id.* at 306 (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S.Ct. 1562, 1568-70 (2016)).  Here, Plaintiffs do not assert that SRA-L failed to comply with any duty imposed upon it by the FPA, and instead assert that "the court should assume that at all times the SRA-L was acting within the parameters of the FERC permit…."[43]  As set forth above, Plaintiffs' Petition does not raise a federal question.  In light of the narrow application of § 825p and the determination that this case does not "arise under" 28 U.S.C. § 1331, this suit also does not fall within the exclusive jurisdictional grant set forth in § 825p.

---

[42] In opposition to the Motion to Remand, SRA-L does not focus on § 825p as independently conferring federal jurisdiction.  Instead, SRA-L relies on § 825p for its argument that "the exercise of federal jurisdiction in this case would not disturb the balance of federal and state judicial responsibilities."  R. Doc. 1, p. 17.  *See also*, R. Doc. 23, pp. 18 & 19 ("The federal-state balance is not disrupted by the Court's maintaining jurisdiction over this suit as shown under 16 USC § 825p, which provides federal courts 'exclusive jurisdiction' over cases involving the FPA.").

[43] R. Doc. 8-1, p. 6.

## III.    Conclusion

Because federal courts are courts of limited jurisdiction, it is presumed that a suit removed to federal court lies outside this limited jurisdiction, and the party seeking removal bears the burden of demonstrating that a federal question exists pursuant to 28 U.S.C. § 1331.  *See*, *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  Further, "[b]ecause removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'"  *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quoting *In re Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).  Here, SRA–L has not met its burden of establishing that this court has federal subject matter jurisdiction.  *Id*.

## IV.    Recommendation

For the reasons set forth above, the undersigned recommends that Plaintiffs' Motion to Remand[44] be GRANTED and that this matter be remanded to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

Because the undersigned recommends that the Motion to Remand be granted, the undersigned further recommends that the Motion to Dismiss[45] be DENIED AS MOOT.  *See*, *International Energy Ventures Management, LLC v. United Energy Group, Limited*, 818 F.3d 193, 210 (5th Cir. 2016) (when subject matter jurisdiction is lacking, court may only dismiss substantive claims without prejudice because "[t]o dismiss on any other basis would require the presence of jurisdiction that does not exist.").  *See also*, *Leet v. Hospital Service District No. 1 of East Baton Rouge Parish*, Civil Action No. 15-811, 2017 WL 3782780, at * 5 (M.D. La. Aug. 31, 2017) ("if a claim is subject to conflict preemption, the issue remains a state issue, and the apparent issue of

---

[44] R. Doc. 8.

[45] R. Doc. 5.

conflict preemption may preclude the validity of the law but must be enforced within the jurisdiction of the state courts.").

Signed in Baton Rouge, Louisiana, on October 31, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**